UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NICHOLAS D. VELLA,                                    :

      Plaintiff,                    :     08 Civ. 11166 (AJP)

    -against-                    :     **OPINION AND ORDER**

MICHAEL J. ASTRUE, Commissioner of                    :
Social Security,
               :
      Defendant.
               :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

    Pro Se Plaintiff Nicholas Vella brings this action pursuant to § 205(g) of the Social

Security Act (the "Act"), 42 U.S.C. § 405(g), challenging the final decision of the Commissioner of

Social Security (the "Commissioner") denying Vella child's insurance benefits. (Dkt. No. 2: Compl.)

The Commissioner has moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). (Dkt.

No. 12: Gov't Notice of Motion; see also Dkt. No. 13: Comm'r Br.; Dkt. No. 14: Vella Aff.)  The

parties have consented to decision of this case by a Magistrate Judge pursuant to 28 U.S.C. § 636(c).

(Dkt. No. 9: Consent Stip. & Order.)

    For the reasons set forth below, the Commissioner's motion for judgment on the

pleadings is GRANTED.

H:\OPIN\VELLA

## FACTS

### Procedural Background

On January 13, 2006, fifty-four year old Nicholas Vella applied for disabled adult child ("DAC") insurance benefits[1/] alleging that he had been disabled since January 1, 1961[2/] due to various psychiatric disorders affecting him since childhood, namely paranoid schizophrenia and psychosis, aggravated by a long history of drug abuse and alleged molestation as a child. (Dkt. No. 12: Administrative Record filed by the Commissioner ["R."] 12-17, 54-57, 75, 449-50, 460.) When Vella's application was denied initially (R. 42-43, 50-53), he requested a hearing before an Administrative Law Judge ("ALJ") (R. 44-45, 49). ALJ Wallace Tannenbaum held a hearing on November 21, 2006, at which Vella testified and was represented by counsel (Binder & Binder). (R. 454-68.) On February 22, 2007, ALJ Tannenbaum issued a decision finding Vella not disabled. (R. 26-33.) ALJ Tannenbaum's decision became the Commissioner's final decision when the Appeals Council denied Vella's request for review on October 3, 2008. (R. 4-6.)

The issue before the Court is whether the Commissioner's decision that Vella was not disabled from January 1, 1961 is supported by substantial evidence. The Court finds that it was.

---

[1/]   An adult can receive child's insurance benefits if the claimant is at least 18 years old and has a disability that began before attaining the age of 22. See 42 U.S.C. § 402(d)(1)(G); 20 C.F.R. § 404.350(a)(5).

[2/]   Vella claims he was disabled since 1966 (Dkt. No. 2: Compl. ¶ 5), but his DAC insurance benefits application states January 1, 1961, when Vella was 10 years old, as the disability onset date. (R. 54, 76.)

**Hearing Before the ALJ**

**Non-Medical Evidence**

_____Vella was born on August 15, 1951, and turned twenty-two on August 15, 1973.  (R. 54, 72, 457.)  Vella testified that he attended a school for "troubled" children when he was ten years old and dropped out of school by age fourteen.  (R. 80, 453, 459-60.)  The New York City Department of Education was unable to locate any "special education record[s]" for Vella.  (R. 132.)  He received a General Equivalency Diploma when he was about thirty-three years old.  (R. 457-58, 462-63.)

Vella testified that he began to experience psychiatric problems around age ten, when he was placed in a school for "troubled" children.  (R. 80, 459.)  Shortly after, he began seeing a psychiatrist at St. Vincent's Hospital on a regular basis.  (R. 78, 459-60.)  St. Vincent's, however, only had records for Vella dating back to 1975.  (R. 87-102.)  Vella also claimed to have been hospitalized at St. Vincent's and Bellevue Hospital at least eighteen times before his twenty-second birthday and to have received outpatient care at St. Vincent's, Bellevue and Cabrini during that period.  (R. 453, 460-61.)  The earliest medical record for Vella at any of those hospitals is from April 3, 1974, when he was hospitalized at Bellevue for an episode of psychotic symptoms and schizophrenia.  (R. 140-41, 450, 461, 465-66.)  Consistent with the 1974 medical records, Vella testified that he had "been in therapy since . . . 23 years old."  (R. 463.)[3/]

---

[3/]    Vella added:  "After the age of 22, like 23 years old, I started becoming, you know, hospitalized quite frequently."  (R. 463.)

Vella's only previous work entailed performing data entry and stuffing envelopes for the Parking Violations Bureau as part of a job training program provided by the Federation of the Handicapped ("FedCap").  (R. 80, 458.)  Vella worked at the Parking Violations Bureau for only "one or two months" in 1989 because he "couldn't handle it."  (R. 80, 458.)  Vella earned $2,842 for his work.  (R. 80.)  He also earned $402.58 in 1972, but does not remember the source of this income.  (R. 80.)  Other than these brief periods of employment, Vella has been dependent on his family or public assistance (including SSI) for his entire life.  (R. 458-59.)  Upon his mother's death in 2005, Vella received a small inheritance with which he is supporting himself.  (R. 69, 459; see also Dkt. No. 13: Comm'r Br. at 2 n.4:  Vella likely lost eligibility for SSI benefits upon receipt of this inheritance because SSI is income and resource-based.)  Vella testified that he currently lives alone, but is in contact with his siblings.  (R. 457, 467.)

Vella testified to using various recreational drugs starting around age fourteen.[4/]  (R. 98, 461-62, 464.)  He claimed that as a child he had been molested by a priest and others, causing him to turn to drugs because he "couldn't handle it."  (R. 14, 449, 460.)  Vella's older brother, Vincent Vella Sr., stated in a letter (submitted at the ALJ's suggestion) that Vella had been on "al[l] sorts of psychotic medications his whole life."  (R. 453, 467.)  Additionally, Mary Colamarino, a

---

[4/]  Vella testified to using "[a]mphetamine, methamphetamine, a lot of acid, barbituates, valiums [sic], cocaine, [and] some heroin."  (R. 464.)  Vella smoked marijuana, and received a summons for marijuana as an adult.  (R. 462, 467.)  Vella admitted that his emotional problems may have been exacerbated by drug use at an early age.  (R. 465.)

family friend, asserted that Vella had been on all sorts of drugs from an early age, had been hospitalized at least thirty-five times, and in her opinion was unable to work.  (R. 451.)

### Medical Evidence Before the ALJ

The earliest medical records regarding Vella's claims are from April 3, 1974, when Edgecombe Avenue Narcotics Center referred him to Bellevue Hospital.  (R. 140-41.)  Doctors at Bellevue diagnosed him with "[s]chizophrenia, chronic undifferentiated type." (R. 141.)  Vella, who was then twenty-three years old, admitted to occasional marijuana use, but denied any other significant drug abuse.  (R. 141.)  Bellevue's Discharge Summary stated that Vella had "no history of psychiatric hospitalization" or treatment.  (R. 141.)  Bellevue also noted that Vella "is a poor historian and does not give a meaningful history."  (R. 141.)

The earliest record from St. Vincent's shows that on January 29, 1975, St. Vincent's admitted Vella for an episode of bizarre behavior and diagnosed him with chronic paranoid schizophrenia.  (R. 89, 90, 101.)  St. Vincent's noted that Vella "has had one previous psychiatric hospitalization in 1974 at Bellevue." (R. 89, 90.)  His parents indicated that he had been "us[ing] pills [and] smok[ing] marijuana."  (R. 98.)  St. Vincent's transferred Vella to a treatment program where he remained from March 17 to July 11, 1975.  (R. 89, 90-97.)  Upon discharge from day treatment, Vella was referred to outpatient aftercare at Beth Israel Hospital (R. 89, 92), but Beth Israel could not locate any of Vella's records (R. 135).

On February 12, 1981, St. Vincent's admitted Vella for treatment for delusional thoughts and paranoia after an altercation with his family.  (R. 147-48.)  St. Vincent's diagnosed him with acute and chronic schizophrenia and prescribed Thorazine.  (R. 147-48.)

On March 11, 1981, the Social Security Administration found Vella "disabled" (as an adult) and awarded him Supplemental Security Income ("SSI") disability benefits.  (R. 32.)  Prior to this award, Vella had filed applications for disability benefits on March 12, 1975, December 8, 1975, and March 21, 1978, which the Social Security Administration had denied, finding Vella not disabled.  (R. 32.)

On three separate occasions in 1983, Bellevue admitted Vella for treatment following psychotic episodes involving non-violent disputes with his parents.  (R. 142-46.)  On each occasion, Bellevue doctors diagnosed him with chronic schizophrenia and prescribed various regimens of Navane, Cogentin and Prolixin.  (R. 142-46.)

In July 1985, Vella voluntarily began receiving outpatient care for schizophrenia and drug abuse at the Stuyvestant Polyclinic of the Cabrini Medical Center (R. 114-15, 381-82, 386-87), which treatment has continued to the present (R. 105-27, 150-438, 440).  In a May 10, 2006 letter, Dr. Michelle Soe stated that she had been treating Vella at Stuyvestant for schizophrenia since July 2005.  (R. 440.)  Dr. Soe confirmed that Vella's current diagnosis is "[s]chizophrenia, residual type," and that he had retained that diagnosis since 1985.  (R. 440.)  Dr. Soe noted that Vella had a history of psychotic illness for which he had been taking psychotropic medication; the illness and medication affected Vella's ability to engage in work.  (R. 440.)  Dr. Soe stated that "Vella endorsed

a history of psychiatric hospitalization" and treatment at Bellevue and St. Vincent's "earlier in 1985"

prior to coming to Stuyvestant, but she did not discuss Vella's treatment history prior to 1985.  (R.

440.)

On October 4, 2006, Dr. Laura Sirulnik, a psychiatrist at Stuyvestant, completed an

impairment questionnaire regarding Vella's mental health history and functional ability.  (R. 441-48.)

She reported that Vella suffered from schizophrenia, residual type, and that he had been taking

Risperdal without any adverse side-effects.  (R. 441, 446.)  In response to a question as to the earliest

onset date of Vella's symptoms, Dr. Sirulnik wrote "?".  (R. 448.)  Dr. Sirulnik assessed Vella to be

moderately to markedly limited in many, but not all, areas related to his ability to perform work.  (R.

443-46.)  She also indicated that Vella experienced episodes of deterioration or decompensation in

work or work-like settings because of his inability to tolerate stress and his propensity to become

irritable with poor impulse control.  (R. 446.)  Dr. Sirulnik opined that Vella was capable of work

in a low stress environment.  (R. 447.)

On March 20, 2004, Dr. Ed Kamin, a New York State agency psychologist, reviewed

the available medical evidence regarding Vella's mental health and determined that Vella suffered

from paranoid schizophrenia and other psychotic disorders.  (R. 138.)  Dr. Kamin concluded,

however, that there was "[i]nsufficient [e]vidence" to determine whether Vella was impaired  from

August 15, 1969 to August 14, 1973, the relevant period between Vella's eighteenth and twenty-

second birthdays.  (R. 138.)

**The ALJ's Decision**

On February 22, 2007, ALJ Tannenbaum in a written decision denied Vella's application for disabled adult child's insurance benefits for the period prior to August 14, 1973.  (R. 26-33.)

ALJ Tannenbaum noted that Vella testified that:  a priest and others molested him in his early adolescence; he went to a school for troubled children at age ten, dropped out of school at age thirteen or fourteen, and later obtained a General Equivalency Diploma; he started using drugs at age thirteen and received a summons for smoking marijuana as an adult; he lived alone, currently supporting himself with income from an inheritance from his parents; and he had siblings with whom he was in contact.  (R. 32.)

ALJ Tannenbaum also noted that Vella had submitted two undated letters in support of his application.  (R. 33.)  Vincent Vella, Sr. stated in his letter that Vella had been hospitalized "at least 35 times" and that he had taken all sorts of drugs in his early teens.  (R. 33.)  Mary Colamarino's letter echoed Vella's brother's statements, claiming that Vella had been hospitalized "at least 35 times" and had been doing drugs from a very early age.  (R. 33.)

ALJ Tannenbaum reviewed the medical evidence.  (R. 32.)  He noted that the Social Security Administration found Vella disabled in connection with his SSI application on March 11, 1981, after three previous failed applications.  (R. 32.)

ALJ Tannenbaum stated that "there is no medical evidence whatsoever for the pertinent period."  (R. 32.)  The earliest evidence was Vella's hospitalization at Bellevue for

psychotic symptoms in April 1974. (R. 32.) ALJ Tannenbaum pointed out that Bellevue's Discharge Summary did not indicate any prior treatment related to mental disorder. (R. 32.) ALJ Tannenbaum noted that Vella's father signed an order of drug contact during the April 1974 hospitalization, although Vella only admitted to occasional marijuana use. (R. 32.) ALJ Tannenbaum noted that Vella has received outpatient care at Cabrini Mental Health Clinic since July 1985. (R. 32.)

ALJ Tannenbaum found that Vella had not provided any objective medical evidence that could corroborate any claims of disability during the pertinent period before his twenty-second birthday. (R. 33.) Vella's claims were "not supported by the medical record," which "fails to show that [Vella] received any medical treatment at all prior to August 14, 1973, the date he attained age 22." (R. 33.)

ALJ Tannenbaum concluded that the "objective medical evidence [did] not establish the existence of a medically determinable impairment prior [to Vella's] attainment of age 22." (R. 33.) Accordingly, ALJ Tannenbaum concluded that Vella "was not under a disability as defined in the Social Security Act, at any time prior to August 14, 1973, the date he attained age 22 (20 CFR 404.350(a)(5) and 404.1520(c))." (R. 33.)

ALJ Tannenbaum's decision became the final decision of the Commissioner when the Appeals Council denied review on October 3, 2008. (R. 4.)

H:\OPIN\VELLA

## ANALYSIS

### I.    THE APPLICABLE LAW

#### A.    Definition of Disability

A person is considered disabled for Social Security benefits purposes when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); see, e.g., Barnhart v. Thomas, 540 U.S. 20, 23, 124 S. Ct. 376, 379 (2003); Barnhart v. Walton, 535 U.S. 212, 214, 122 S. Ct. 1265, 1268 (2002); Betances v. Comm'r of Soc. Sec., 206 Fed. Appx. 25, 26 (2d Cir. 2006); Surgeon v. Comm'r of Soc. Sec., 190 Fed. Appx. 37, 39 (2d Cir. 2006); Rodriguez v. Barnhart, 163 Fed. Appx. 15, 16 (2d Cir. 2005); Malone v. Barnhart, 132 Fed. Appx. 940, 941 (2d Cir. 2005); Butts v. Barnhart, 388 F.3d 377, 383 (2d Cir. 2004), amended on other grounds, 416 F.3d 101 (2d Cir. 2005).[5/]

> An individual shall be determined to be under a disability only if [the combined effects of] his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the

---

[5/]    See also, e.g., Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003); Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002); Draegert v. Barnhart, 311 F.3d 468, 472 (2d Cir. 2002); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000); Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000); Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999); Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998); Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996).

> immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A)(B), 1382c(a)(3)(B)(G); see, e.g., Barnhart v. Thomas, 540 U.S. at 23, 124 S. Ct. at 379; Barnhart v. Walton, 535 U.S. at 218, 122 S. Ct. at 1270; Betances v. Comm'r of Soc. Sec., 206 Fed. Appx. at 26; Butts v. Barnhart, 388 F.3d at 383; Draegert v. Barnhart, 311 F.3d at 472.[6/]

> In determining whether an individual is disabled for disability benefit purposes, the Commissioner must consider:  "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts;  (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam).[7/]

**B.    Standard of Review**

> A court's review of the Commissioner's final decision is limited to determining whether there is "substantial evidence" in the record to support such determination. E.g., Acierno v. Barnhart, 475 F.3d 77, 80-81 (2d Cir.), cert. denied, 127 S. Ct. 2981 (2007); Halloran v. Barnhart 362 F.3d 28, 31 (2d Cir. 2004), Jasinski v. Barnhart, 341 F.3d 182, 184 (2d Cir. 2003); Green-

---

[6/]    See also, e.g., Shaw v. Chater, 221 F.3d at 131-32; Rosa v. Callahan, 168 F.3d at 77; Balsamo v. Chater, 142 F.3d at 79.

[7/]    See, e.g., Brunson v. Callahan, No. 98-6229, 199 F.3d 1321 (table), 1999 WL 1012761 at *1 (2d Cir. Oct. 14, 1999); Brown v. Apfel, 174 F.3d at 62; Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983).

Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003); 42 U.S.C. § 405(g).[8/]  "'Thus, the role of the district court is quite limited and substantial deference is to be afforded the Commissioner's decision.'"  Morris v. Barnhardt, 02 Civ. 0377, 2002 WL 1733804 at *4 (S.D.N.Y. July 26, 2002).[9/]

The Supreme Court has defined "substantial evidence" as "'more than a mere scintilla [and] such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971); accord, e.g., Rosa v. Callahan, 168 F.3d at 77; Tejada v. Apfel, 167 F.3d at 773-74.[10/]  "[F]actual issues need not have been resolved by the [Commissioner] in accordance with what we conceive to be the

---

[8/]     See also, e.g., Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002); Vapne v. Apfel, 36 Fed. Appx. 670, 672 (2d Cir.), cert. denied, 537 U.S. 961, 123 S. Ct. 394 (2002); Horowitz v. Barnhart, 29 Fed. Appx. 749, 752 (2d Cir. 2002); Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000); Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000); Brown v. Apfel, 174 F.3d 59, 61 (2d Cir. 1999); Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998); Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991); Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983); Dumas v. Schweiker, 712 F.2d 1545, 1550 (2d Cir. 1983); Rodriguez v. Barnhart, 03 Civ. 7272, 2004 WL 1970141 at *8 (S.D.N.Y. Aug. 23, 2004), aff'd, 163 Fed. Appx. 15 (2d Cir. 2005).

[9/]     See also, e.g., Duran v. Barnhart, 01 Civ. 8307, 2003 WL 103003 at *9 (S.D.N.Y. Jan. 7, 2003); Florencio v. Apfel, 98 Civ. 7248, 1999 WL 1129067 at *5 (S.D.N.Y. Dec. 9, 1999) ("The Commissioner's decision is to be afforded considerable deference; the reviewing court should not substitute its own judgment for that of the Commissioner, even if it might justifiably have reached a different result upon a de novo review.") (quotations & alterations omitted).

[10/]    See also, e.g., Halloran v. Barnhart, 362 F.3d at 31; Jasinski v. Barnhart, 341 F.3d at 184; Green-Younger v. Barnhart, 335 F.3d at 106; Veino v. Barnhart, 312 F.3d at 586; Shaw v. Chater, 221 F.3d at 131; Curry v. Apfel, 209 F.3d at 122; Brown v. Apfel, 174 F.3d at 61; Perez v. Chater, 77 F.3d at 46.

preponderance of the evidence." Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), cert. denied, 459 U.S. 1212, 103 S. Ct. 1207 (1983).  The Court must be careful not to "'substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review.'"  Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991).[11/]  However, the Court will not defer to the Commissioner's determination if it is "'the product of legal error.'"  E.g., Duvergel v. Apfel, 99 Civ. 4614, 2000 WL 328593 at *7 (S.D.N.Y. Mar. 29, 2000) (Peck, M.J.); see also, e.g., Butts v. Barnhart, 388 F.3d 377, 384 (2d Cir. 2004), amended on other grounds, 416 F.3d 101 (2d Cir. 2005); Tejada v. Apfel, 167 F.3d at 773 (citing cases).

Disabled adult child disability benefits are available "if such child was under a disability (as so defined) at the time he attained the age of 18 or if he was not under such a disability (as so defined) at such time but was under a disability (as so defined) at or prior to the time he attained (or would attain) the age of 22."  42 U.S.C. § 402(d)(1)(G); see also 20 C.F.R. § 404.350(a)(5).

The Commissioner has established regulations to determine a child's eligibility for SSI benefits:

> The regulations establish a three-step process.  First, the child must not be engaged in "substantial gainful activity." [20 C.F.R.] § 416.924(a). Second, the child "must have a medically determinable impairment(s)" that is "severe" in that it causes "more than minimal functional limitations." Id. § 416.924(c).  Third, the child's impairment or combination of impairments must medically or functionally equal an

---

[11/]     See also, e.g., Colling v. Barnhart, 254 Fed. Appx. 87, 88 (2d Cir. 2007); Veino v. Barnhart, 312 F.3d at 586; Toles v. Chater, No. 96-6065, 104 F.3d 351 (table), 1996 WL 545591 at *1 (2d Cir. Sept. 26, 1996).

impairment listed in an appendix to the regulations.  See id. § 416.924(d); 20 C.F.R. pt. 404, subpt. P, app. 1 (listing and describing impairments).

Encarnacion v. Astrue, 568 F.3d 72, 75 (2d Cir. 2009).

> ### C.    The ALJ's Duty to Develop the Record

It is the "well-established rule in [the Second] circuit" that the ALJ must develop the

record, even where, as here, the claimant was represented by counsel:

> Even where a claimant is represented by counsel, it is the well-established rule in our circuit "that the social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 508-09 (2d Cir. 2009) (internal quotation marks and brackets omitted); accord Butts v. Barnhart, 388 F.3d 377, 386 (2d Cir. 2004), reh'g granted in part and denied in part, 416 F.3d 101 (2d Cir. 2005); Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996); see also Gold v. Sec'y of Health Educ. & Welfare, 463 F.2d 38, 43 (23 Cir. 1972) (pro se claimant). Social Security disability determinations are "investigatory, or inquisitorial, rather than adversarial." Butts, 388 F.3d at 386 (internal quotation marks omitted). "[I]t is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits." Id. (internal quotation marks omitted); accord Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999).

Moran v. Astrue, No. 07-1728-cv, -- F.3d --, 2009 WL 1767634 at *3 (2d Cir. June 24, 2009).[12]

---

[12]    See also, e.g., 42 U.S.C. § 423(d)(5)(B); 20 C.F.R. §§ 416912(d), 416.912(e)(2); Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008); Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996); Echevarria v. Sec'y of H.H.S., 685 F.2d 751, 755 (2d Cir. 1982); Torres v. Barnhart, 02 Civ. 9209, 2007 WL 1810238 at *9 (S.D.N.Y. June 25, 2007) (Peck, M.J.) (& cases cited therein). This duty is heightened when the claimant is mentally impaired.  McCall v. Astrue, 05 Civ. 2042, 2008 WL 5378121 at *16 (S.D.N.Y. Dec. 23, 2008).

## II.    APPLICATION TO VELLA'S CLAIMS

In order to be eligible for child's insurance benefits, Vella must prove that he has a disability that developed prior to age twenty-two, i.e., prior to August 14, 1973.  See 42 U.S.C. § 402(d)(1)(G); 20 C.F.R. § 404.350(a)(5); 20 C.F.R. § 404.1509.[13]

In a proceeding to judicially review a final decision of the Commissioner, the plaintiff – here Vella – bears the burden of establishing the existence of a disability.  See, e.g., Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008); Butts v. Barnhart, 388 F.3d 377, 383 (2d Cir. 2004), amended on other grounds, 416 F.3d 101 (2d Cir. 2005); Draegert v. Barnhart, 311 F.3d 468, 472 (2d Cir. 2002); Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000); Melville v. Apfel, 198 F.3d 45, 51 (2d Cir. 1999) ("The claimant generally bears the burden of proving that she is disabled under the statute. . ."); Aubeuf v. Schweiker, 649 F.2d 107, 111 (2d Cir. 1981) ("It is well established that the burden of proving disability is on the claimant."); Dousewicz v. Harris, 646 F.2d 771, 772 (2d Cir. 1981); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980); Adams v. Flemming, 276 F.2d 901, 903 (2d Cir. 1960) ("The controlling principles of law upon [judicial] review [of a Social Security denial] are well established . . . , namely, 'the burden of sustaining the claim for benefits is on the claimant' and 'The findings of the Social Security Agency are final and binding if there is a substantial basis for them.'"); Gibbs v. Astrue, 07 Civ. 10503, 2008 WL 2627714 at *18 & n.29 (S.D.N.Y. July 2, 2008) (Peck, M.J.) (citing cases), report & rec. adopted, 2008 WL 4620203 (S.D.N.Y. Oct. 16, 2008).

---

[13]    It is undisputed that Vella was not engaged in substantial gainful activity, and thus the Court proceeds directly to the second step, whether Vella had a severe impairment.

In determining the existence of a disability, the ALJ should consider all relevant evidence, including personal and anecdotal testimony by witnesses.  20 C.F.R. § 404.1520(a)(3); 20 C.F.R. § 404.1512(b); see, e.g., 20 C.F.R. § 404.1529 (a) ("In determining whether you are disabled, we consider . . . . statements or reports from you, your treating or nontreating source, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing . . . your impairment(s).").  Subjective statements made by the claimant and others, however, will not establish disability without the support of objective medical evidence.  20 C.F.R. § 404.1529(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled."); Behling v. Astrue, No. 07-CV-4354, 2009 WL 346963 at *8 (E.D.N.Y. Feb. 6, 2009) ("[A] plaintiff's subjective feelings about pain, unsubstantiated by or contrary to a doctor's evaluation, is not by itself a basis for the award of DIB.").

Here, Vella failed to provide any objective medical evidence regarding his mental health prior to 1974.  Instead, he relied entirely on his own testimony and his friend's and family's statements in proving his disability.  (See pages 4-5 above.)  ALJ Tannenbaum fulfilled his duty to help develop the record by requesting relevant medical records prior to 1973, but none of the hospitals that Vella alleged treated him before he turned twenty-two could produce any records for that period.  (See page 5 above.)  The earliest medical records for Vella date back to April 3, 1974, when Vella was twenty-three.  (See pages 3, 5 above.)  Those Bellevue records stated that Vella had "no history of psychiatric hospitalization" or treatment (see page 5 above) – which contradicts Vella's

claims that he had been hospitalized at least eighteen times before his twenty-second birthday (see page 3 above).[14]

     This is not a case where the ALJ failed to develop the record.  The ALJ obtained all available records from Bellevue, St. Vincent's and Stuyvesant/Cabrini.  (See pages 3, 5 above.) Whether those hospitals lost or discarded pre-1974 medical records, as Vella asserts (see, e.g., Dkt. No. 14: Vella 4/20/09 Aff. ¶ 3; Dkt. No. 16: Vella 5/21/09 Letter; Dkt. No. 17: Vella 6/9/09 Aff.), or whether pre-1974 records never existed because Vella's Bellevue hospitalization in 1974 was his first hospitalization, which seems more likely, the ALJ did develop the record.  Indeed, the ALJ suggested that Vella's counsel obtain information from Vella's family.  (See page 4 above.)  Had Vella not waited until he was in his fifties to apply, the result might have been different.  But there was simply no credible evidence of treatment before 1974.

     ALJ Tannenbaum found that the "objective medical evidence [did] not establish the existence of a medically determinable impairment prior [to] the claimant's attainment of age 22." (R. 33.)  ALJ Tannenbaum's decision that Vella was not disabled prior to August 14, 1973 was based on substantial evidence.

---

[14]   The letters from Vella's brother and friend that he had been hospitalized at least thirty-five times did not indicate that those hospitalizations occurred before age twenty-two.  (See pages 4-5 above.)

     Vella's hearing testimony also contradicted his claim that he had been hospitalized numerous times before age twenty-two.  Vella testified – consistent with his 1974 medical records – that he had "been in therapy since . . . 23 years old" (see page 3 above) and further that "[a]fter the age of 22, like 23 years old, I started becoming, you know, hospitalized quite frequently" (see page 3 n.3 above).

## CONCLUSION

For the reasons set forth above, the Commissioner's determination that Vella was not disabled within the meaning of the Social Security Act prior to August 14, 1973 is supported by substantial evidence.  The Commissioner's motion for judgment on the pleadings (Dkt. No. 12) is GRANTED.  The Clerk of Court is to enter judgment for the Commissioner.

SO ORDERED.

Dated:       New York, New York
             July 7, 2009

**Andrew J. Peck**
United States Magistrate Judge

Copies to:    Nicholas D. Vella (Regular & Certified Mail)
              Leslie A. Ramirez-Fisher, Esq.

H:\OPIN\VELLA